IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**GOLDEN TRIANGLE VEIN CENTER**                                                            **PLAINTIFFS**
**and DR. DARYL GUEST**

**V.**                                                                                  **NO. 1:15-CV-00140-DMB-DAS**

**TOTAL BODY CONTOURING**
**INCORPORATED; and**
**KEVIN LEROY SIMONS**                                                                    **DEFENDANTS**

**OPINION AND ORDER**

Before the Court is the motion for default judgment of Golden Triangle Vein Center and Dr. Daryl Guest. Doc. #19. For the reasons below, the motion will be granted in part and denied in part.

**I**
**Background**

On August 10, 2015, Golden Triangle Vein Center ("Vein Center") and Dr. Daryl Guest filed a complaint against Total Body Contouring Incorporated ("Total Body") and Kevin Leroy Simons, claiming breach of contract, unjust enrichment, and fraud/negligent misrepresentation. Doc. #1. Plaintiffs alleged that, based on Defendants' representation to them "that they were an authorized dealer of [the Lipocontrol Osyris 980 Diode Laser Machine]," Plaintiffs contracted with Defendants to purchase the machine and "other associated equipment" from Defendants for $96,670.00. *Id*. at ¶¶ 10–12. According to Plaintiffs, despite paying Defendants, they never received the machine and later "learned that, contrary to the representations made by Simons, Defendants were not an authorized distributor for the Machine." *Id*. at ¶¶ 12–35. Plaintiffs sought punitive damages, as well as damages for "the amount paid to Defendants, the costs of lost business opportunities, expenses associated with training, costs, attorneys' fees, and other

damages." *Id*. at ¶¶ 38–39.

On April 8, 2016, Plaintiffs filed two proofs of service reflecting that Simons and Total Body were served the summons on March 15, 2016.[1] Doc. #14; Doc. #15. On April 7, 2016, the Clerk of the Court entered a notice advising that Defendants were in default and that entry of default should be requested. Doc. #13. On April 12, 2016, Plaintiffs filed an application to the Clerk of the Court for the entry of a default, along with a supporting affidavit averring that Defendants failed "to plead or otherwise defend as provided by the Federal Rules of Civil Procedure." Doc. #16; Doc. #16–1. On April 13, 2016, the Clerk of the Court entered default against Total Body and Simons. Doc. # 17; Doc. #18. On April 21, 2016, Plaintiffs filed the instant motion for default judgment with a supporting memorandum. Doc. #19; Doc. #20.

On November 21, 2016, due to deficiencies in the complaint's jurisdictional allegations, the Court issued a show cause order directing Plaintiffs to submit competent evidence identifying the citizenships of Guest, Vein Center, and Simons, along with a motion to amend their jurisdictional allegations if diversity jurisdiction could be established.[2] Doc. #21. On November 22, 2016, the Court, noting that "nothing was submitted to allow the Court to make a determination of damages on the motion [for default judgment]," entered an order deferring Plaintiffs' motion and permitting Plaintiffs "to supplement their motion with affidavits or other evidence to determine the amount of the default judgment."[3] Doc. #23.

On December 6, 2016, Plaintiffs, in response to the show cause order, filed a motion for

---

[1] Plaintiffs were granted two requested extensions to serve process. Doc. #7; Doc. #10. Proofs of service were originally filed March 23, 2016, but were refiled as instructed by the Clerk of the Court to include the process service fee.

[2] The Court also directed Plaintiffs to address "the impact of such jurisdictional amendment on the entry of default." Doc. #21 at 4.

[3] The Court noted that the ultimate ruling on the motion for default judgment was subject to Plaintiffs demonstrating the existence of this Court's subject matter jurisdiction. Doc. #23 at n.1.

leave to amend their complaint to correct the jurisdictional allegations, attaching evidence regarding the citizenships of Guest, Vein Center, and Simons, along with a proposed amended complaint. Doc. #25. On December 13, 2016, Plaintiffs filed a supplement to their motion for default judgment, attaching affidavits from Lindsey Miller, their office manager; Charles E. Winfield, their attorney of record; and Austin Vollor, a managing partner at the firm of their attorney of record. Doc. #27; Doc. #27-1; Doc. #27-2; Doc. #27-3. This Court granted Plaintiffs' motion for leave to amend the complaint on December 29, 2016, and that same day, Plaintiffs filed their amended complaint.[4] Doc. #28; Doc. #29. Except for the amended jurisdictional allegations, the amended complaint contains the same allegations and demand for damages as the original complaint.

## II
## Analysis

Pursuant to "Rule 55 of the Federal Rules of Civil Procedure, federal courts have the authority to enter a default judgment against a defendant who has failed to plead or otherwise defend upon motion of the plaintiff." *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015). "Under Fifth Circuit law, there are three steps to obtaining a default judgment: first, default by the defendant; second, clerk's entry of default; and third, entry of a default judgment." *Gray v. MYRM Holdings, L.L.C.*, No. A-11-cv-180, 2012 WL 2562369, at *3 (W.D. Tex. June 28, 2012) (citing *N.Y. Life. Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996)) (emphases omitted). The first two steps have been satisfied here. Thus, the

---

[4] Pursuant to Rule 5(a)(2), "[n]o service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party …." Plaintiffs' amended the initial complaint only to correct the jurisdictional allegations; the amended complaint did not assert any new claims against Defendants. Therefore, in granting the motion for leave, the Court also held that the Clerk's prior entries of default were not impacted by Plaintiffs' filing of the amended complaint. Doc. #28.

3

only issue left to consider is whether default judgment should be entered.[5] In making this determination, the Court considers a three-question analysis: (1) "whether the entry of default judgment is procedurally warranted;" (2) "whether there is a sufficient basis in the pleadings for the judgment;" and (3) "what form of relief, if any, the plaintiff should receive." *J & J Sports*, 126 F. Supp. 3d at 813–14.

### A. Procedural Justification

In determining whether a default judgment is procedurally warranted, a court should consider: (1) "whether material issues of fact are at issue;" (2) "whether there has been substantial prejudice;" (3) "whether the grounds for default are clearly established;" (4) "whether the default was caused by a good faith mistake or excusable neglect;" (5) "the harshness of a default judgment;" and (6) "whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

First, where as here, a party fails to respond to or answer the complaint, there are no material issues of fact at issue. *See John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-cv-4194, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) ("Green Tree has not filed a responsive pleading or otherwise appeared in this case, and thus has not contested any facts presented in Plaintiff's Complaint."). Second, Defendants' failure to respond has caused prejudice to Plaintiffs because "failure to respond … threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests in pursuing its rights afforded by law." *Id*. Third, as mentioned above, the grounds for default have been clearly established. Fourth, there is no evidence before the Court that "the default was caused by a good faith

---

[5] "A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default. Default judgments are a drastic remedy, not favored by the Federal Rules of Civil Procedure and resorted to by courts only in extreme situations." *Tyson v. Quality Homes of McComb, Inc.*, No. 3:13-cv-887, 2014 WL 6673578, at *2 (S.D. Miss. Nov. 24, 2014) (internal quotation marks, alterations, citations omitted).

mistake or excusable neglect." Fifth, Defendants have had over a year to respond to the complaint; thus, "while default judgment is a harsh remedy, any harshness is mitigated [when Defendants have] had substantial time to correct the default." *Helena Chem. Co. v. Aylward*, No. 4:15-cv-96, 2016 WL 1611121, at *2 (N.D. Miss. Apr. 21, 2016). Finally, in the event Defendants later seek to challenge the default, the Court is aware of no facts that would make it "obliged to set aside the default." Considering these factors, the Court finds they all weigh in favor of default judgment being procedurally warranted in this case.

### B. Sufficient Basis in Pleadings

"In light of the entry of default, Defendants are deemed to have admitted the allegations set forth in Plaintiff's Complaint." *J & J Sports.*, 126 F. Supp. 3d at 815. "However, [a] defendant is not held to admit facts that are not … well pleaded or to admit conclusions of law." *Id.* at 814 (internal quotation marks omitted); *see Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("a defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered."). Addressing the "sufficient basis in the pleadings" requirement, the Fifth Circuit has stated:

> Despite announcing that a default judgment must be "supported by well-pleaded allegations" and must have "a sufficient basis in the pleadings," the *Nishimatsu* court did not elaborate on these requirements … [and] we have found no guidance in our own cases. Nevertheless, we draw meaning from the case law on Rule 8 which sets forth the standards governing the sufficiency of a complaint. Rule 8(a)(2) requires a pleading to contain a short and plain statement of the claim showing that the pleader is entitled to relief. The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds upon which it rests. The factual allegations in the complaint need only be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). Detailed factual allegations are not required, but the pleading must present more than an unadorned, the-defendant-unlawfully-harmed-me accusation.

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (internal quotation

marks, citations, and alterations omitted).

Plaintiffs' amended complaint asserts against Defendants claims for breach of contract, unjust enrichment, and fraud/negligent misrepresentation. Doc. #29 at ¶¶ 40–56.

### 1. Breach of Contract

Under Mississippi law,[6] the elements of a breach of contract claim are: (1) "the existence of a valid and binding contract;" and (2) "that the defendant has broken or breached it." *Bus. Commc'ns, Inc. v. Banks*. 90 So.3d 1221, 1224–25 (Miss. 2012). Under Mississippi's Uniform Commercial Code,[7] "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."[8] Miss. Code Ann. § 75-2-204(1).

Here, Plaintiffs allege that "Simons, acting on behalf of himself and Total Body, represented to Plaintiffs that Defendants would sell and deliver to Plaintiffs a new [machine] and other associated equipment …. In exchange for this promise, Plaintiffs made payment to Defendants in the amount of $97,670.00." Doc. #29 at ¶ 10. The Court finds that these actions created a valid and enforceable contract.

With regard to the breach of contract element, Plaintiffs allege that "[d]espite receiving full payment for the [m]achine, Defendants failed, and continue to fail, to deliver [the] Machine to Plaintiffs." *Id*. at ¶ 42. Considering these allegations, the Court concludes that, as to the claim

---

[6] "The Court applies the substantive law of Mississippi in this action since federal jurisdiction is founded on diversity of citizenship." *LPP Mortg. Ltd. v. TAZ, Inc.*, No. 2:14-cv-39, 2014 WL 4273266, at *3 (S.D. Miss. Aug. 28, 2014).

[7] Mississippi's Uniform Commercial Code ("UCC") "applies to transactions in goods." Miss. Code Ann. § 75-2-102. "'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid." *Id*. at § 75-2-105. There is no question the machine at issue here falls into the category of "goods" under the UCC. Because the contract involved a sale of goods, it is governed by the UCC.

[8] In circumstances where the UCC is not applicable, a "valid contract" includes "an offer, acceptance of the offer, and consideration." *Heritage Bldg. Prop., LLC, v. Prime Income Asset Mgmt., Inc.*, 43 So.3d 1138, 1143 (Miss. Ct. App. 2009). This is generally consistent with the UCC. *See, e.g.,* Miss. Code Ann. § 75-2-206.

of breach of contract, there is a sufficient basis in the pleadings for a default judgment.

## 2. Unjust Enrichment

The doctrine of "[u]njust enrichment only applies to situations where there is no legal contract and 'the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another.'" *Miss. Dep't of Envtl. Quality v. Pac. Chlorine, Inc.*, 100 So.3d 432, 442 (Miss. 2012) (*quoting Powell v. Campbell,* 912 So.2d 978, 982 (Miss. 2005)). "The UCC has not changed the non-UCC principles applicable to unjust enrichment." 1 ANDERSON U.C.C. § 1-103:339 (3d. ed.). Because the Court has already found that a legal contract exists between the parties, default judgment should not be entered on Plaintiffs' unjust enrichment claim. *See Jordan v. Nationwide Tr. Servs., Inc.*, No. 3:14-cv-503, 2014 WL 6982641, at *5 (S.D. Miss. Dec. 9, 2014) ("Plaintiffs cannot state a claim for unjust enrichment here because they had a legally binding contract ....").

## 3. Fraudulent/Negligent Misrepresentation

### a. Fraudulent misrepresentation

Under Mississippi law, the elements of fraudulent misrepresentation are: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Holland v. Peoples Bank & Trust Co.*, 3 So.3d 94, 100 (Miss. 2008) (*quoting Bank of Shaw v. Posey*, 573 So.2d 1355, 1362 (Miss. 1990)). The elements do not differ when a transaction is governed by the UCC. *See Franklin v. Lovitt Equip. Co., Inc.*, 420 So.2d 1370, 1373 (Miss. 1982) (listing same nine elements in UCC case). Each element must be proven by clear and convincing evidence. *Levens*

*v. Campbell*, 733 So.2d 753, 761 (Miss. 1999). "Clear and convincing evidence is such a high standard that even the overwhelming weight of the evidence does not rise to the same level." *Moran v. Fairley*, 919 So.2d 969, 975 (Miss. Ct. App. 2005).

Under Rule 9(b) of the Federal Rules of Civil Procedure, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." *Lone Star Ladies Inv. Club v. Scholtzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (internal quotation marks omitted).

Here, Plaintiffs allege fraud based on the following statements by Defendants: (1) that "Defendants were an authorized dealer of the Machine;" (2) "that Defendants … ordered a new Machine from the manufacturer for delivery to Plaintiffs;" (3) "that the Machine would be delivered;" (4) "that the Machine was being held by United States Customs;" (5) "that the Machine would be in good working order;" (6) "that a Nebraska Machine would be delivered as a substitute for the Machine;" and (7) "that a substitute laser was available for surgeries." Doc. #29 at ¶ 50.

### i. *Authorized dealer and new machine*

As an initial matter, the complaint fails to allege *when* or *where* Simons represented that Defendants were an authorized dealer of the machine[9] or *when* or *where* Simons represented that

---

[9] The Court acknowledges that Plaintiffs assert that "[i]n March 2015, Simons … represented to Plaintiffs that [he] would sell and deliver … a new [machine]." Doc. #29 at ¶ 10. However, the Court declines to assume that this was

8

Defendants ordered a new machine. Accordingly, the claim of fraud based on these statements is not pleaded with particularity under Rule 9.

### ii. Machine delivery, condition, and substitute machine

The statements regarding delivery amount to statements regarding future performance. Under Mississippi law, "[f]raudulent representations upon which a party may predicate any demand for relief must relate to past or presently existing facts, ... and cannot consist of promises, except in some cases when a contractual promise is made with the present undisclosed intention of not performing it. *Bank of Shaw, a Branch of Grenada Bank v. Posey*, 573 So.2d 1355, 1360 (Miss. 1990) (citation omitted); *Holland v. Peoples Bank & Trust Co.*, 3 So.3d 94, 100 (Miss. 2008) ("In cases of fraud, relief cannot be based on future promises ...."). These alleged statements were not made during the course of contract negotiations. Thus, the statements cannot be considered fraudulent representations.[10] *See Salitan v. Horn*, 55 So.2d 444, 446 (Miss. 1951) ("The fraud here claimed was that the materials company did not live up to its promise, made simultaneously with the execution and delivery of the acceptances, to send a salesman within five weeks to contact and sell prospective purchasers. ... The promise was to do an act in the future. The representation related neither to a past nor presently existing fact.").

### iii. U.S. Customs

Plaintiffs allege that on "on June 8, Simons indicated that the Machine would not be delivered that week and claimed that the Machine was being held in United States Customs."

---

when Simons made the representation that Defendants were an authorized dealer. *See Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 974 (N.D. Tex. 2014) ("[T]he specificity required to satisfy Rule 9(b) cannot simply be assumed.").

[10] While not specifically pled as false statements, the Court notes that Plaintiffs allege Simons stated that a doctor in Nebraska was willing to let Plaintiffs borrow his machine until Plaintiffs' machine arrived, and that Simons was directing a technician to fly to Nebraska and bring the Nebraska machine to Plaintiffs' office in Mississippi. However, Plaintiffs have not alleged how they relied on these representations or how they were injured based on any such reliance.

Doc. #1 at ¶ 22. Plaintiffs do not, however, allege how they relied on this statement, or how such reliance caused them injury. Accordingly, the fraud claim must fail in this regard.

*iv. Substitute laser*

Plaintiffs allege that on the afternoon of June 11, 2015, Simons represented that "he had another laser that he carried with him for backup and that ... it could be used on the patients who were having work on their arms and chin." Doc. #1 at ¶ 30. Plaintiffs further allege that "[r]elying on these representations, Plaintiffs made pre-surgery arrangements for those patients." *Id*. Finally, Plaintiffs allege that "Simons claimed that the laser had shorted out and that it could not be used. Plaintiffs were then forced to turn away patients who had already been prepared for the procedure." *Id*. at ¶ 31. However, Plaintiffs do not allege how the preparation of the patients caused Plaintiffs to suffer damage. Accordingly, Plaintiffs may not recover based on the allegedly fraudulent statement regarding a substitute laser.

### b. Negligent misrepresentation

The elements of negligent misrepresentation are: "(1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance."[11] *Holland*, 3 So. 3d at 101 (*quoting Horace Mann Life Ins. Co. v. Nunaley*, 960 So.2d 455, 461 (Miss. 2007)). The Fifth Circuit applies "the heightened pleading requirements [of Rule 9(b)] when the parties have not urged a separate focus on the negligent misrepresentation claims such as when fraud and negligent misrepresentation

---

[11] "Negligent misrepresentation differs from fraudulent misrepresentation only in that the defendant-speaker need not know the statement was false if he failed to exercise reasonable care in making the statement." *Crockett v. Citifinancial, Inc.*, 192 F. Supp. 2d 648, 653 (N.D. Miss. 2002).

claims are based on the same set of alleged facts." *Lone Star Fund V (U.S.) LP v. Barclays Bank PLC*, 594 F.3d 383, 387 n.3 (5th Cir. 2010) (internal quotation marks omitted).

Plaintiffs' negligent misrepresentation claim is based on the same allegations as their fraudulent misrepresentation claim. *See* Doc. #29 at ¶¶ 49–56. Considering the allegations, the Court reaches the same conclusions as it did with respect to the fraud claims—specifically, that the claims must fail.

### C. Relief

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *U.S. For Use of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1015 (5th Cir. 1987). Rather, "[d]amages must be proven by a hearing or a demonstration of detailed affidavits establishing the necessary facts." *J & J Sports*, 126 F. Supp. 3d at 816. Beyond providing sufficient evidence, a plaintiff must also provide legal support for their request for damages. *See Buckley v. Paperboy Ventures*, 277 F.R.D. 20, 21–22 (D.D.C. 2011) (where movant failed to address "threshold question" of applicable law of damages, court was "unable to determine the amount of damages to be awarded"); *Ciasulli v. Hartmann*, No. 08-5544, 2009 WL 150668, at *1 (D.N.J. Jan. 21, 2009) (denying motion for default judgment without prejudice where, among other things, plaintiff failed "to provide ... legal argument ... substantiating the [damages] requested").

If damages, including fees, cannot be computed with certainty, a district court may grant a motion for default judgment on the issue of liability and, to the extent it seeks damages, deny the motion without prejudice, subject to additional argument or evidence from the plaintiff. *See, e.g., Yan Fang Jiang v. Hannon Grp., Ltd.*, No. 14-cv-309, 2015 WL 5010501, at *4 (E.D. Wis. Aug. 21, 2015) (granting motion for default judgment on issue of liability and denying on issue

of damages); *I.U.O.E. Local 68 Pension Fund v. Resorts Int'l Hotel, Inc.*, No. 12-6773, 2013 WL 4042451, at *4 (D.N.J. Aug. 8, 2013) (same).

In their motion for default judgment, Plaintiffs "seek recovery of $96,670.00, plus other compensatory damages, pre-judgment interest and post-judgment interest, attorneys' fees, costs, and other relief to which they are entitled." Doc. #19 at ¶ 2. According to Plaintiffs, this results in a judgment in "the total amount of $107,969.00, plus $800.00 in costs, plus $11,124.00 in attorneys' fees, plus pre and post judgment interest." Doc. #27 at ¶ 2.

Although Plaintiffs have submitted evidence regarding their losses, they have not, beyond a conclusory assertion that "punitive damages may be awarded," offered any legal argument or authority supporting their claims for damages.[12] Under these circumstances, the Court concludes that the damages at issue cannot be computed with the requisite certainty. Therefore, the motion for default judgment will be denied without prejudice to the extent it requests damages.

### III
### Conclusion

For the reasons above, Plaintiffs' motion for default judgment [19] is **GRANTED in part and DENIED in part**. The motion is GRANTED on Plaintiffs' breach of contract claims and DENIED on their unjust enrichment, negligent misrepresentation and fraudulent misrepresentation claims. The motion is DENIED without prejudice on the issue of damages. Plaintiffs may file a renewed motion for default judgment on the issue of damages[13] within fourteen (14) days of the issuance of this order.

---

[12] Plaintiffs' request for damages includes amounts for, among other things, office renovations, training, travel expenses (meals, mileage, hotel), supplies, and "manpower."

[13] As explained above, the UCC applies to the contract in this case. Accordingly, the UCC governs recovery on the only claim for which this Court has found liability—Plaintiffs' claim for breach of contract. *See Upchurch Plumbing, Inc. v. Greenwood Utils. Comm'n*, 964 So.2d 1100, 1110 (Miss. 2007) ("Whether or not the contract should be interpreted under the UCC or general contract law should depend upon the nature of the contract and also upon whether the dispute in question primarily concerns the goods furnished or the services rendered under the

**SO ORDERED**, this 23rd day of March, 2017.

                                                          **/s/ Debra M. Brown**
                                                          **UNITED STATES DISTRICT JUDGE**

---

contract.") (alterations omitted).  In this regard, damages will likely be governed by the UCC, including Miss. Code Ann. § 75-2-713 and § 75-2-715.